UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MARTHA SANDERS                                          PLAINTIFF


VS.                              CIVIL ACTION NO. 4:06CV66TSL-JCS


LEAKE COUNTY SCHOOL DISTRICT,
AND MELANIE HARTLEY, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY AS
SUPERINTENDENT OF THE LEAKE COUNTY
SCHOOL DISTRICT                                         DEFENDANTS


MEMORANDUM OPINION AND ORDER

    This cause is before the court on the motion of defendants
Leake County School District and Melanie Hartley, Superintendent
of Leake County School District, for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Martha
Sanders has responded to the motion and the court, having
considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes that the motion
is well taken and should be granted.

    Plaintiff Martha Sanders became employed by defendant Leake
County School District (School District) as principal of
Thomastown Attendance Center in 1998 and continued in that
position through the 2004-2005 school year.  In the spring of
2005, School District Superintendent Hartley, citing inadequate
performance by plaintiff, recommended to the School Board that
plaintiff's contract not be renewed for the succeeding school

year.  Following a three-day hearing requested by plaintiff, the
School Board voted to adopt the superintendent's recommendation.
Plaintiff filed the present action pursuant to 42 U.S.C. § 1983,
claiming that defendants' nonrenewal decision violated her First
Amendment rights in that it was made in retaliation for
plaintiff's having previously filed an EEOC charge against the
School District complaining of alleged race discrimination.  In
addition, plaintiff asserted that defendants violated her Fifth
and Fourteenth Amendment due process rights and breached her
employment contract with the School District, by failing to
conduct a performance evaluation prior to her nonrenewal, as she
contends was required by the contract.  Defendants have moved for
summary judgment on each of these claims, which the court
considers seriatim.

First Amendment:

It is well established that "public employees do not
surrender all their First Amendment rights by reason of their
employment," Jordan v. Ector County, No. 06-51445, 2008 WL 271735,
*2 (5th Cir. Feb. 1, 2008) (citation omitted), and that a public
employee may not be retaliated against for exercising her right to
free speech, Thompson v. City of Starkville, 901 F.2d 456, 460
(5th Cir. 1990).  See also Davis v. McKinney, No. 07-20184, 2008
WL 451769, *6 (5th Cir. Feb. 21, 2008) ("The First Amendment
protects a public employee's right, in certain circumstances, to

2

speak as a citizen on matters of public concern.") (citing
Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20
L. Ed. 2d 811 (1968)).  To establish a First Amendment retaliation
claim, a plaintiff-employee must show that (1) she suffered an
adverse employment action; (2) her conduct was protected by the
First Amendment, that is, she spoke as a private citizen on a
matter of public concern; (3) her interest in commenting on the
matters of public concern outweighs the public employer's interest
in the efficient provision of public services; and (4) her
protected speech precipitated the challenged adverse employment
action.  Nixon v. City of Houston, 511 F.3d 494, 497 (5th Cir.
2007); Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L.
Ed. 2d 708 (1983).  If the plaintiff carries the burden of proving
each of these elements, the employer may nonetheless defeat the
plaintiff's claim if it demonstrates by a preponderance of the
evidence that it would have taken the same action even in the
absence of the protected conduct.  Lukan v. North Forest Indep.
Sch. Dist., 183 F.3d 342, 346 (5th Cir. 1999).

     In the case at bar, plaintiff alleges that she was unlawfully
fired in retaliation for exercising her First Amendment rights.
More specifically, she contends that defendant's nonrenewal of her
employment contract was in retaliation for an April 24, 2004
charge of discrimination she filed with the EEOC in which she

3

asserted she was being discriminated against on account of her race.  In her charge, plaintiff alleged the following:

> White principals receive more funding, are allowed to
> make hiring and staffing recommendations and have their
> schools maintained, improved and renovated.  I am black
> and my school receives less funding.  I am not allowed
> to make hiring and staffing recommendations as readily
> as white principals.  My recommendations are more
> scrutinized.  My school receives little up keep and no
> improvements and/or renovations.  I believe that this
> difference in treatment is due to the fact that I am
> black and other principals are white.

Plaintiff submits that her EEOC charge was protected speech, and that defendants' nonrenewal of her contract therefore violated her rights under the First Amendment.  For their part, defendants maintain that plaintiff's EEOC charge was nothing more than a private employment dispute and hence was not speech entitled to First Amendment protection.  They also insist, though, that even if it were protected speech, plaintiff's EEOC charge had no bearing on the decision that her contract would not be renewed; that decision was instead based solely on manifest deficiencies in plaintiff's job performance.

"Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court."  Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 184 (5th Cir. 2005). Three considerations are involved in the determination whether a public employee's speech is constitutionally protected:

> First it must be determined whether the employee's
> speech is pursuant to his or her official duties.  If it
> is, then the speech is not protected by the First

4

Amendment.  Second, if the speech is not pursuant to
official duties, then it must be determined whether the
speech is on a matter of public concern.  Third, if the
speech is on a matter of public concern, the Pickering
test must be applied to balance the employee's interest
in expressing such a concern with the employer's
interest in promoting the efficiency of the public
services it performs through its employees. (Footnotes
and citations omitted).

Davis, 2008 WL 451769, at *6 (quoting Ronna Greff Schneider, 1

Education Law: First Amendment, Due Process and Discrimination

Litigation § 2:20 (West 2007)).

"For an employee's speech to qualify for First Amendment

protection, he must be speaking 'as a citizen on a matter of

public concern.'"  Nixon v. City of Houston, 511 F.3d 494, 497 (5th

Cir. 2007) (quoting Garcetti v. Ceballos, 547 U.S. 410, —, 126 S.

Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006)).  The Supreme Court's

recent decision in Garcetti "holds that before asking whether the

subject-matter of particular speech is a topic of public concern,

the court must decide whether the plaintiff was speaking "as a

citizen" or as part of her public job."  Davis, 2008 WL 451769, at

*6 (quoting Mills v. City of Evansville, 452 F.3d 646, 647-48 (7th

Cir. 2006)).  The Garcetti decision established that "[a]n

employee is not speaking as a citizen-but rather in his role as an

employee-when he 'make[s] statements pursuant to [his] official

duties.'"  Id. (quoting Garcetti, 126 S. Ct. at 1960).

"Restricting speech that owes its existence to a public employee's

professional responsibilities does not infringe any liberties the

employee might have enjoyed as a private citizen." <u>Garcetti</u>, 126 S. Ct. at 1960.

In <u>Davis v. McKinney</u>, the Fifth Circuit recognized that "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." <u>Davis</u>, 2008 WL 451769, at *7.  <u>See id</u> at *16 n.3 (an "employee's communications that relate to his own job function up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First Amendment protection").  This is true, even if such communication is not specifically required by the employee's job duties, if it is closely related to his job duties.  <u>Id</u>. (citing <u>Williams v. Dallas Indep. Sch. Dist.</u>, 480 F.3d 689 (5th Cir. 2007)).[1]  "If however a public employee takes his job concerns to persons outside the work

---

[1]

In <u>Williams v. Dallas Indep. Sch. Dist.</u>, 480 F.3d 689 (5th Cir. 2007), the plaintiff, an athletic director, was terminated after he wrote a memo to his school principal and office manager requesting information about the use of funds collected at athletic events, including negative remarks about how the school allocated those funds.  Although his job did not require him to write the memo, the court found that he wrote the memo in the course of performing his job and that therefore, he wrote the memo as an employee and not as a public citizen.  <u>See id</u>. ("Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection.").
    Although defendants herein attempt to liken this case to <u>Williams</u>, it is clear that the cases are distinguishable; <u>Williams</u> involved internal complaints by the employee, whereas this case involves complaints to an outside agency.

place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." <u>Id</u>.

Here, no reasonable argument could be made that plaintiff filed her EEOC charge of discrimination pursuant to any official duty of her job or in the course of performing her job; thus, <u>Garcetti</u> does not compel a conclusion that she was speaking as an employee, rather than as a citizen, in making the charge. <u>See</u> <u>Davis</u>, 2008 WL 451769, at *6 (finding that a plaintiff's complaint of discrimination to EEOC, an outside agency, that the defendant was discriminating against women and African-Americans in its imposition of sanctions for violations of the University's internet use policy, was not made by the plaintiff as an employee because it was not within the plaintiff's official job function to communicate with outside agencies).

Although <u>Garcetti</u> held that speech which is made as part of an employee's job duties is made by the employee as an employee, and not as a public citizen, the fact that an employee's communication to an outside agency about job concerns is <u>not</u> required by her job or not closely related to the performance of her job does not necessarily mean that her communication with such agency is undertaken as a private citizen, rather than as an employee. <u>See</u> <u>Wyckoff v. Maryland</u>, 522 F. Supp. 2d 730, 737 ("Although statements made by public employees in the scope of

7

their official duties are not protected, a public employee
speaking as a citizen has a right to raise matters of public
concern."). Rather, the court must determine whether such speech
was on a matter of public concern.

To determine whether a public employee's speech addresses a
matter of public concern, the Fifth Circuit has employed "two
tests, sometimes in conjunction with one another, to determine
whether speech relates to a public concern," both derived from
Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708
(1983). Kennedy v. Tangipahoa Parish Library Bd. of Control, 224
F.3d 359, 366 (5th Cir. 2000). Under the first, "the content-
form-context test," the question "whether an employee's speech
addresses a matter of public concern [is] determined by the
content, form, and context of a given statement, as revealed by
the whole court record." Id. (quoting Connick, 461 U.S. at
147-48, 103 S. Ct. 1684)). Under the second test, "the
citizen-employee test," "'when a public employee speaks not as a
citizen on matters of public concern, but instead as an employee
upon matters of only of personal interest,' the employee's speech
falls outside the parameters of speech involving matters of public
concern." Id. (quoting Connick, 461 U.S. at 147, 103 S. Ct.
1684). Under the second test, "'[t]he existence of an element of
personal interest on the part of an employee in the speech does
not prevent finding that the speech as a whole raises issues of

public concern.'" Id.  "In cases involving mixed speech, [the court is] bound to consider the Connick factors of content, context, and form, and determine whether the speech is public or private based on these factors."  Id. (citation omitted).

In Davis, although the court wrote that communications by an employee to an outside agency about her job functions "are ordinarily not made as an employee, but as a citizen," 2008 WL 451769, at *6, the court has held that EEOC charges do not address matters of public concern, stating bluntly that "[l]odging a complaint with the EEOC, without further airing of grievances, creates a private, personal dispute between employer and employee[,] not . . . a generalized petition for a remedy to a public problem." Short v. City of West Point, Miss., No. 97-60086, 1997 WL 575048, *1 (5th Cir. Aug. 29, 1997) (citing Ayoub v. Texas A & M Univ., 927 F.2d 834 (5th Cir. 1986), cert. denied, 479 U.S. 1064, 107 S. Ct. 948 (1987)).  Indeed, in Short, the court not only rejected a suggestion the First Amendment gives special (i.e., unqualified) protection to EEOC claims, but explicitly declared, "This type of speech is not protected by the First Amendment because it concerns merely personal employment status." Id.

In the court's view, it is questionable whether the Fifth Circuit intended in Short to set forth a per se rule that an EEOC charge can never be entitled to First Amendment protection.

9

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. <u>Connick</u>, 461 U.S. at 146, 103 S. Ct. at 1684. "A court must therefore discern the purpose of the employee's speech-that is, whether she spoke on behalf of the public as a citizen, or whether the employee spoke for herself as an employee." <u>Morgan v. Ford</u>, 6 F.3d 750, 754 (11th Cir. 1993) (citations omitted). To do this, the court considers the content, form and context of a given statement, as revealed by the whole record. <u>Id</u>. "A court may consider the employee's attempts to make the concerns public, along with 'the employee's motivation in speaking.'" <u>Id.</u>

Most courts considering whether an EEOC charge is protected speech under the "content-form-context" analysis of <u>Connick</u> have eschewed a per se rule against finding such speech is or is not protected, and have instead considered, on a case-by-case basis, whether the nature and content of the EEOC charge at issue relate only to matters directed an the employee's self-interest or employment conditions, which are not matters of public concern, or whether the charge relates to or includes other matters which are legitimate matters of public concern. <u>See</u>, <u>e.g.</u>, <u>Cox v. Shelby</u>

State Community College, 48 Fed. Appx. 500, 508-509, 2002 WL
31119695, *7 (6th Cir. 2002) (in determining whether EEOC charge
alleging race discrimination was protected speech, "the relevant
question [was] whether [the employee] was motivated to file in
order to make a statement about racial discrimination in general
on campus, or whether his career was his primary concern;" if the
former, plaintiff could establish a cognizable First Amendment
claim, but if the latter, First Amendment protection would not
attach); Grabow v. Independent School Dist. No. I-008, 1996 WL
282166, *4 (10th Cir. 1996) (finding the plaintiff professor could
not establish First Amendment claim for retaliation based on
filing an EEOC charge alleging he was denied equipment necessary
for his classes and excluded from school functions because of his
disability, because the charge "did not relate to a matter of
political, social, or other concern to the community, but rather
involved only 'matters of internal departmental affairs and
personal interest'"); Rice v. Ohio Dep't of Transp., 887 F.2d 716,
720-21 (6th Cir. 1989) (holding that EEOC charge brought by
plaintiff "to promote her career, not promote a cause" related to
purely personal employment issues and hence was not public speech
meriting First Amendment protection); Carrero v. Robinson, 2007 WL
1655350 (D. Colo. 2007 (finding there was no First Amendment
protection where EEOC charges referred exclusively to complaints
by the plaintiff as to how he was being treated: "the Plaintiff's

11

EEOC charges merely reflect that a single employee in the Sheriff's Department is upset with the actions his employer has taken with regard to his job."); Wyckoff v. Maryland, 522 F. Supp. 2d 730, 737-738 (D. Md. 2007) (First Amendment protection extended to EEOC charge which, while personal to plaintiff in some respects, also alleged that defendant had excluded females from the police department's Criminal Investigation Division; finding that "[d]iscriminatory promotion processes within public police departments are matters of public concern."); Henry v. City of Tallahassee, 149 F. Supp. 2d 1324, 1328 (N.D. Fla. 2001) (opining that "when-in the context of a single-plaintiff EEOC charge or court complaint-an employee complains that he was the victim of discrimination and/or retaliation and does so for personal benefit, the main thrust of such speech will rarely, if ever, qualify as speech on a matter of 'public concern'"). But see Greenwood v. Ross, 778 F.2d 448, 457 (8th Cir. 1985) (holding that the "filing of an EEOC charge and a civil rights lawsuit are activities protected by the first amendment").

In Ayoub v. Texas A & M University, 927 F.2d 834 (5th Cir. 1986), on which the court relied in Short, the plaintiff had filed an EEOC charge alleging that the defendant's pay scale discriminated against foreign-born professors and favored white, American professors. The court explained that "when [an employee] speaks as an employee on matters that address only his personal

employment conditions, he is not protected from discharge for engaging in that speech by the First Amendment," even if "the topic of the employee's speech was one in which the public might or would have had a great interest." Id. at 837.  This principle, the court wrote, is "especially compelling in cases where an employee's expressions are protected against retaliation under Title VII of the Civil Rights Act." Id.  After reviewing the record, the court found that "Ayoub's complaints focused on his own individual compensation;" there was "no evidence that Ayoub expressed concern about anything other than his own salary." Id. The court noted, moreover, that, "[c]ertainly, Ayoub never attempted to air his complaints in a manner that would call the public's attention to the alleged wrong."  In the end, therefore, the court concluded that "[a]lthough pay discrimination based on national origin can be a matter of public concern, in the context in which it was presented in this case by Ayoub, it was a purely personal and private matter." Id. at 838.

As was the case in Ayoub, the plaintiff in Short had filed an EEOC charge claiming that he was the victim of discrimination.  To the point, he claimed in his charge that he was denied a promotion within the City's fire department because of his race.  His complaint concerned alleged only discrimination against him that affected only him.

13

In both Ayoub and Short, the court's opinion focused on the fact that the plaintiffs' allegations were personal to them; but the court also stressed the fact that in neither case had the plaintiff made any effort to bring the allegations of discrimination to public light.  In neither case was there a "generalized petition for a remedy to a public problem."  Short, 1997 WL 575048, at *1.

In the case at bar, it is not as clear as in Short or Ayoub that plaintiff's EEOC charge "concerns merely [her own] personal employment status."  Id.  Her allegation that she was not allowed to make hiring and staffing recommendations as readily as white principals would seem to fall in that category.  However, she also alleged in her charge that because she is black, defendants provided less funding for her school as compared to schools with white principals, and provided less upkeep/maintenance and no improvements or renovations to her school, as compared to schools with white principals.  These complaints could be read to imply that the alleged discrimination against plaintiff was detrimental not only to her but also to the school's staff and its students.  That is, these allegations could be read to suggest that plaintiff's charge was about more than harm to the plaintiff herself and raised an issue of public concern.[2]  However, as in

_____

[2]   That plaintiff's grievance was intended to encompass harm to the students, faculty, staff and administration of the Thomasville Attendance Center is apparent from an affidavit

14

Short and Ayoub, plaintiff made no attempts to make her alleged
concerns public but rather presented them in the context of a
private employment grievance, which leads the court to conclude
that she did not file a "grievance" as a "citizen"; rather, she
filed an EEOC charge as an employee. As such, she cannot succeed
on her First Amendment claim for that reason.

However, even were the court to assume that plaintiff's
relevant speech–her EEOC charge of discrimination–constitutes a
matter of public concern, her First Amendment claim nonetheless
fails because plaintiff has presented insufficient evidence that
her speech was a motivating factor in her nonrenewal.

-------

submitted by plaintiff to the EEOC along with her charge, in which
she elaborated on the substance of the allegations in her charge,
and wrote:

> Because of these limitations and restrictions my
> students, staff, faculty and administration are unable
> to perform our duties. Students, parents, staff,
> faculty and administration suffer from low morale. The
> performance of my students is made to suffer and thus
> fall below their potential. I believe that these
> limitations and restrictions are placed upon my
> students, staff, faculty and administration because I,
> the principal of the school, am black.

Ultimately, however, this affidavit is immaterial to plaintiff's
claim because, while it was provided to the EEOC, defendants were
not aware of the affidavit and the charges therein at the time of
the challenged employment decision. See Beattie v. Madison County
Sch. Dist., 254 F.3d 595, 604 (5th Cir. 2001) (dismissing
plaintiff's First Amendment retaliation claim because "[i]f there
is no evidence that the [defendant] knew of the protected
activity, [the plaintiff] cannot show that the activity motivated
retaliatory behavior."). According to defendants, the affidavit
was not released by the EEOC to the School District or
Superintendent Hartley until after Sanders filed this lawsuit.

In support of her assertion that her EEOC charge was a motivating factor in defendants' nonrenewal decision, plaintiff argues that during her six years of employment prior to filing the EEOC complaint, she received no indication from defendants that her performance was considered less than satisfactory, and yet after she filed her EEOC charge, defendants took the first opportunity available to them to nonrenew her contract.

The Fifth Circuit has held that "'[c]lose timing between an employee's protected activity and an adverse action against him may provide the "causal connection" required to make out a prima facie case of retaliation,'" Ajao v. Bed Bath and Beyond, Inc., No. 06-20988, 2008 WL 345505, *6 (5th Cir. Feb. 8, 2008) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007)), but has emphasized that where a plaintiff seeks to rely on "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the "temporal proximity must be "very close,"'" id.[3] (quoting Clark County Sch.

---

[3]     Defendants cite Strong v. University HealthCare System, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007), for the proposition that plaintiff cannot sustain her burden with proof of temporal proximity alone. In Strong, however, the court, in a Title VII case, held that "temporal proximity alone is insufficient to prove but for causation." Id. (citation omitted)(emphasis added). Here, the issue is no but-for causation but rather whether plaintiff has proven her prima facie case; and on that issue, proof of "mere temporal proximity" may suffice, if the temporal proximity is "very close." See id. ("temporal proximity alone, when very close, can in some instances establish a prima facie

Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing cases where a three- or four-month period was insufficient to show causal connection)).  See also id. at *6-7 (holding that "temporal proximity of four months is not close enough, without additional supporting summary-judgment evidence, to establish a causal connection between the employment action and the protected conduct"); Swanson v. Gen. Svcs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation.").  Compare Matthews v. High Island Indep,. School Dist., 991 F. Supp. 840, 846 (S.D. Tex. 1998) (where plaintiffs were notified that their contracts were not being renewed just over two months after plaintiffs filed grievance complaining of alleged sexual harassment, "[t]he close temporal proximity of the events, standing alone, [was] sufficient as a matter of law to imply a cause and effect relationship between the two" and satisfy plaintiffs' burden to establish prima facie case).

In the case at bar, plaintiff relies on nothing more than temporal proximity to support her prima facie case.[4]  Yet

_____

case of retaliation," but temporal proximity standing alone cannot be sufficient proof of but for causation).

[4]    Plaintiff has alleged that during the six years she was principal of Thomastown prior to filing the EEOC charge, there had never been any indication that her performance was deficient in any respect, and that defendants found problems with her job

Superintendent Hartley's nonrenewal recommendation was made in February 2005, ten months after plaintiff filed her EEOC charge, and the Board's nonrenewal decision was made in May 2005, more than a year after the charge was filed (though only two months after the EEOC charge was dismissed).  This is hardly "very close" in time.  Plaintiff suggests, though, it is close enough, from a practical standpoint, given that following the filing of her EEOC charge in April 2004, defendants could not have nonrenewed her contract for the 2004-2005 school year because under state law, certified personnel must be given notice of contract nonrenewal by February.  Thus, according to plaintiff, defendants made the decision to nonrenew her contract at the first available opportunity following her EEOC charge.

While that may be true, the court is not persuaded that this justifies an exception to the requirement of true temporal proximity.  Where a plaintiff has no evidence to suggest a causal link between the plaintiff's protected speech and the adverse employment action other than temporal proximity, the requirement that the temporal proximity on which she relies be "very close" serves to eliminate other possible explanations for the challenged decision.  That is not the case here.  In <u>Russell v. University of Texas</u>, 234 F. App'x 195, 207 (5th Cir. 2007) (unpublished), the

_____

performance only after she filed her EEOC charge.  However, plaintiff has acknowledged that there were performance issues in the 2004-2005 school year that had not existed in previous years.

plaintiff filed her EEOC charge in October 2003, after the defendant university had already renewed her contract for the 2003-2004 academic year and she had begun the school year.  In April 2004, the defendant notified the plaintiff that her contract would not be renewed for the succeeding academic year.  The court found the plaintiff had failed to establish a causal connection between her grievance and the non-renewal of her contract, stating, "We cannot infer causation in this case because the temporal proximity evidence shows a six-month gap between Dr. Russell's filing of the grievance (October 2003) and the non-renewal of the contract (April 2004)."  The same conclusion must be reached here.  It follows that plaintiff cannot establish her prima facie case.

Even if plaintiff's proof were sufficient to make out her prima facie case on the issue of causation, defendants have presented significant, unrebutted proof that the decision not to renew plaintiff's contract was not influenced by plaintiff's having filed the EEOC charge but rather was based solely on deficiencies in her job performance during the 2004-2005 school year.  According to defendants, Superintendent Hartley's nonrenewal recommendation, which the School Board ultimately voted to adopt, was prompted solely by problems with plaintiff's job performance, which they have identified as follows:

- After the 2004-2005 school year began, in violation of the District policy on student retention, plaintiff unilaterally (i.e, without District approval) implemented what she termed her "first second chance" program, promoting twenty-seven students who had been retained the previous school year;
- She continued to submit revised class schedules well after the deadline and after the school year began.
- She submitted Thomastown's final personnel report well after the deadline, which caused Leake County to submit its entire personnel report to the MDE after the deadline established by the Mississippi Department of Education and thereby potentially jeopardized state funding for the District.
- She ordered over five-hundred textbooks after the 2004-2005 school year began.
- Her school held only about half (22 out of 40) scheduled after-school tutoring sessions from November of 2004 through February of 2005.
- She failed to submit a single Teacher Evaluation report during the 2004-2005 school year.
- She repeatedly failed to obtain prior approval for fund raisers, field trips and personnel meetings.

Plaintiff does not deny that these situations occurred or that they were viewed as deficiencies in her performance by defendants. She complains, though, prior to being given notice of the nonrenewal recommendation, defendants never undertook a formal evaluation of her performance and never gave her notice of alleged unsatisfactory performance or gave her an opportunity to correct any alleged unsatisfactory performance.[5]  Plaintiff reasons that had she not filed the EEOC charge, then "defendants might have evaluated Plaintiff, identified and discussed with her just what was needed in the way of improvement, given her a timeframe to reach her goals set for improvement and provided support in reaching those goals."  She suggests that their failure to do this is indicative of a retaliatory animus.  The fact is, however, plaintiff has acknowledged that during her previous six years as principal of Thomastown before she filed an EEOC charge, defendants never conducted a performance evaluation on her (or on any other principal).  Although the Board had issued a policy in

---

[5]     Plaintiff also contends that parents, faculty members and staff at Thomastown school supported her beliefs and assertions that she was performing a satisfactory job as principal of Thomastown.  However, while there is evidence in the record that plaintiff was well regarded by members of the Thomastown faculty and staff, and by many parents, as well, who thought she was doing a good job at the school, there is nothing to suggest that these individuals were aware of plaintiff's performance deficiencies, and as such, even if it might otherwise be relevant, this evidence has no bearing on whether defendants considered the problems with plaintiff's job performance to warrant her nonrenewal.

September 1989 directing the superintendent to "formulate and implement a formal annual appraisal system based on job descriptions and on-the-job performance of every professional employee," and although an appraisal/evaluation instrument had been crafted, it had never been implemented.  Clearly, the fact that defendants continued not to conduct a formal performance evaluation after plaintiff filed her EEOC charge, just as the defendant had not conducted a formal performance evaluation before she filed her EEOC charge, is irrelevant to her retaliation claim.

Plaintiff has offered no evidence that would create an issue of fact in the face of defendants' evidence that the nonrenewal decision was based on performance issues and would have been made irrespective of plaintiff's EEOC charge.  Accordingly, for this reason, as well as those given supra, the court concludes that summary judgment is in order on plaintiff's First Amendment retaliation claim.  See Strong, 482 F.3d at 487 ("Because [the defendant] stated legitimate reasons for firing [the plaintiff], and because [the plaintiff] has not put forth sufficient evidence that those reasons were pretextual, [the plaintiff's] retaliation claim must fail.").

Due Process

Plaintiff has alleged that she had a property interest in receiving a performance evaluation and that she was deprived of

22

that interest without due process.[6]  In this regard, she notes
that her contract with the School District included a provision
subjecting the contract to Board policy, which would have included
the Board's policy on evaluation of professional employees, and
she contends that her contract therefore created a formal
understanding that for purposes of due process supports her claim
of entitlement to an evaluation.  See Watson v. North Panola
School Dist., 188 Fed. Appx. 291, 294, 2006 WL 1892368, 2 (5th Cir.
2006) (recognizing that property interests entitled to due process
protection can arise from implied contracts or mutually understood
informal procedures).  Plaintiff argues that her right to due
process was violated because she was never given an evaluation in
accordance with the terms and conditions of her employment
contract or given a hearing on the Board's refusal/failure to give
her an evaluation.

Plaintiff's position is flawed on a number of bases.  First,
although the School District had directed that the supervisor
formulate and implement a performance appraisal system, no such
policy was ever implemented.  Thus, the District did not have in
place any policy of conducting formal performance evaluations for
any principal during plaintiff's employment, and plaintiff knew

---

[6]    Plaintiff's due process claim is based solely on the
failure to conduct a performance evaluation and a hearing on the
failure to conduct a performance evaluation.  She acknowledges
that she was given notice and a formal due process hearing on the
nonrenewal decision.

that no formal performance evaluation for principals had been
implemented.  Thus, she had no legitimate expectation that she
would have been subject to a formal evaluation.  Furthermore, the
policy on which she relies as supporting her claimed property
interest merely provides for an evaluation; it does not provide
that professional employees must be given time to improve any
deficiencies in their performance before their contract can be
nonrenewed, or for that matter, even specify a date within the
school year by which a performance evaluation should be conducted.
Sanders failed to provide any authority whatsoever to support her
claim that she had a protected property interest in a performance
evaluation itself. Although courts may "look to . . . procedural
guarantees granted by contract, ordinance, statute or regulation
in assessing whether a property interest exists, the right to
those procedural guarantees is not itself a property right."
Farmer v. Lane, 864 F. 2d 473, 478 (7th Cir. 1988).  See also
Tercek v. City of Gresham, No. 03-731-PA, 2005 WL 627571, at *3
(D. Or. March 11, 2005) ("The written evaluation requirement is
procedural.  Such procedural requirements do not create a
constitutionally protected property interest unless they
significantly limit the decision maker's discretion.").  As
defendants correctly note, "[t]he failure of a state agency to
comply with its internal regulations is insufficient as a matter
of law to establish a violation of Due Process, because

constitutional minima nevertheless may have been met." See Brown
v. Tex. A&M Univ., 804 F.2d 327, 335 (5th Cir. 1986).  Plaintiff's
due process claim fails as a matter of law.

     Breach of Contract

     Sanders alleges that the defendants breached her employment
contract by failing to conduct a performance appraisal.  In their
motion, defendants argue that even if the Board resolution
directing creation of a performance appraisal system constituted a
term of plaintiff's employment contract, summary judgment is in
order because defendants' failure to conduct such a performance
appraisal was not a material breach of plaintiff's contract, and
because in any event, plaintiff suffered no damages as a result of
the failure to conduct a performance evaluation.

     A breach is material where there is "a failure to perform a
substantial part of the contract or one or more of its essential
terms or conditions, or if there is such a breach as substantially
defeats [the purpose of the contract]." Gulf South Capital Corp.
v. Brown, 183 So. 2d 802, 805 (Miss. 1966); McCoy v. Gibson, 863
So. 2d 978, 980 (Miss. Ct. App. 2003).  According to defendant,
the essential terms of plaintiff's contract were that the School
District would employ her as a principal from July 1, 2004, until
June 30, 2005, that plaintiff would perform the duties of a
principal, and that she would be paid an annual salary of
$68,052.00.  The purpose of the contract was clearly to employ

Sanders in a specific position for a specific period of time for a specific salary.

If the contract had required that a performance evaluation be completed and that plaintiff be given an opportunity to correct performance deficiencies, then perhaps she could sustain a claim for breach of contract. However, at best, she had a right under the contract to have the District conduct a performance evaluation; and as defendants correctly point out, she did not sustain any cognizable damages as a result of the omission to perform such an evaluation. Therefore, plaintiff's breach of contract claim will be dismissed.

Conclusion

Based on the foregoing, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this 7th day of March, 2008.


/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE